FILED
2012 FEB -9 PM 2:49
[U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES]
BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| UNITED STATES OF AMERICA, | ) CR No. CR 12 00122 |
|---|---|
| Plaintiff, | ) |
| | ) **I N D I C T M E N T** |
| v. | ) |
| | ) [18 U.S.C. § 1344: Bank Fraud; |
| AVEDIS ABRAHAM HAGOPIAN, | ) 18 U.S.C. § 1014: False |
|   aka "Avo," | ) Statement to a Bank; |
| HECTOR RAY SOTO, JR., | ) 18 U.S.C. § 2: Aiding and |
| PETER EMILE VAN ZITTER, | ) Abetting and Causing an Act to |
| MIKAYEL BADALYAN, | ) be Done] |
|   aka "Charlie," and | ) |
| ANDRE KASUMYAN, | ) |
|   aka "Ando," | ) |
| | ) |
| Defendants. | ) |

The Grand Jury charges:

COUNTS ONE THROUGH SEVEN

[18 U.S.C. §§ 1344(1) and (2), 2]

I.  INTRODUCTORY ALLEGATIONS

1. At all times relevant to this Indictment, Wells Fargo Bank, N.A. ("Wells Fargo") was a federally insured financial institution.

2. At all times relevant to this Indictment, defendants AVEDIS ABRAHAM HAGOPIAN, also known as ("aka") "Avo"

("HAGOPIAN"), HECTOR RAY SOTO, JR. ("SOTO"), and PETER EMILE VAN ZITTER ("VAN ZITTER"), and other known and unknown co-schemers, operated their respective companies out of an office located in Corona, California. These companies were purportedly in the business of assisting small companies in acquiring financing.

II. THE SCHEME TO DEFRAUD

3. Beginning in or about June 2009, and continuing through in or about October 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAGOPIAN, SOTO, VAN ZITTER, MIKAYEL BADALYAN, aka "Charlie" ("BADALYAN"), and ANDRE KASUMYAN, aka "Ando" ("KASUMYAN"), together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, executed a scheme to defraud Wells Fargo as to material matters, and to obtain moneys, funds, credits, assets, securities, and other property owned by and in the custody and control of Wells Fargo by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

4. The fraudulent scheme operated, in substance, in the following manner:

    a. Defendants HAGOPIAN, SOTO, VAN ZITTER, and KASUMYAN, and other co-schemers, recruited individuals in need of financing to pose as long-term owners of "loan-friendly" small companies, that is, companies that had been operational for at least 3-5 years with increasing sales that surpassed $1 million in the last year.

    b. Defendants HAGOPIAN, SOTO, and VAN ZITTER

Case 2:12-cr-00122-JAK   Document 1   Filed 02/09/12   Page 3 of 14   Page ID #:3


identified potential borrowers by advertising their loan services on the Internet, through referrals, or through their own prior business contacts. Defendant KASUMYAN enlisted his own family members and acquaintances to participate in the scheme as borrowers.

    c.    In exchange for their promises to obtain small business loans ranging from $150,000 to $1.5 million and business credit cards from various financial institutions, borrowers paid defendants HAGOPIAN, SOTO, and VAN ZITTER an initial fee ranging from approximately $15,000 to approximately $60,000. This fee purportedly covered all costs associated with setting up a company in the borrower's name, and completion of the loan application paperwork that banks required in order to consider the borrower for a small business loan and business credit card. Defendants HAGOPIAN, SOTO, and VAN ZITTER also typically required the borrower to pay a commission on any small business loan and business credit card the borrower actually received.

    d.    Defendants HAGOPIAN, SOTO, VAN ZITTER, KASUMYAN, and BADALYAN, and other co-schemers, using personal identifying information voluntarily provided by the borrowers, prepared and caused to be prepared Business Banking Loan and Treasury Management Application packages ("loan application") for Wells Fargo requesting small business loans and, oftentimes, business credit cards.

    e.    Defendants HAGOPIAN, SOTO, VAN ZITTER, KASUMYAN, and BADALYAN, and other co-schemers, made and caused to be made one or more of the following material false, fraudulent, and misleading pretenses, representations, and promises, among

others, in the loan applications:

        i) That the borrower had owned and operated the company as president or senior officer for at least three years, when, in truth and in fact, the borrower had not owned and operated the company as president or senior officer for at least three years and usually did not intend to operate the company at all.

        ii) That the borrower could serve as the personal guarantor of the small business loan and business credit card requested in the loan application when, in truth and in fact, the borrower did not have a sufficient amount of personal funds to serve as an actual guarantor of the loan and did not intend to act as such a guarantor.

        iii) That the company had approximately $100,000 in a company bank account when, in truth and in fact, the company did not have any such funds.

        iv) That the company had increasing sales over the past three years that typically surpassed $1 million in the last year, when, in truth and in fact, the company was typically either an inactive or suspended corporation that defendants HAGOPIAN, SOTO, and VAN ZITTER, and other co-schemers, sometimes had purchased for the sole purpose of executing the scheme.

    f. Defendants HAGOPIAN, SOTO, VAN ZITTER, KASUMYAN, and BADALYAN created and caused to be created fraudulent documents and materials that were attached to each of the loan applications. The fraudulent documents and materials typically consisted of:

        i) Corporate tax returns reflecting fabricated

company sales and personal tax returns amended to reflect that the borrowers had received income from the company for years in which the borrower did not own the company;

    ii) profit and loss statements showing fabricated sales;

    iii) false or altered bank account statements for the company showing that it had approximately $100,000 in cash on hand;

    iv) false or altered bank account statements for the borrower reflecting that the borrower had sufficient funds in the borrower's accounts to personally guarantee the requested small business loan and business credit card; and

    v) false business cards, web-sites, and promotional brochures for the company.

  g. After the loan applications were completed and prior to their submission to Wells Fargo, defendants HAGOPIAN, SOTO, VAN ZITTER, and KASUMYAN presented the borrowers with the loan applications for their signatures. By signing the loan applications and, in some instances, the attached documents, the borrowers represented to Wells Fargo that they had verified that all of the information in the loan applications and all documents attached to the loan applications were complete and correct.

  h. Defendants HAGOPIAN, SOTO, and KASUMYAN, and some of the borrowers themselves, then communicated with a Wells Fargo loan officer ("the loan officer") about the loan applications. When the loan officer asked to visit and inspect an office belonging to one of the companies, defendants HAGOPIAN, SOTO, VAN ZITTER, KASUMYAN, and BADALYAN, and other co-schemers, usually

set up or caused to be set up offices that were made to appear to belong to that company, by renting temporarily an office space, moving office furniture into the space, and creating a sign for that company.

      i.    In anticipation of the loan officer's visits, defendants HAGOPIAN, SOTO, and KASUMYAN directed borrowers how to respond to questions from the loan officer based on the false statements and attachments in the loan applications. When the loan officer visited the office space, either the borrowers or defendants HAGOPIAN, SOTO, or KASUMYAN presented the loan applications to the loan officer. The borrowers then made false statements to the loan officer about themselves and the companies. Defendants HAGOPIAN, SOTO, and KASUMYAN, and other co-schemers, also made false statements to the loan officer regarding the companies.

      j.    Defendant HAGOPIAN presented loan applications to the loan officer in instances where the loan officer did not ask to visit the companies' offices. Upon receipt of the loan applications, the loan officer spoke directly to the borrowers or with defendant HAGOPIAN on the telephone about the companies and the companies' businesses. In these telephonic conversations, defendant HAGOPIAN and the borrowers themselves also made false statements about the borrowers and the companies.

      k.    Upon approval of the loan applications, the borrowers wrote checks and wire transferred the proceeds of the loans from their business checking accounts to bank accounts controlled by defendants HAGOPIAN, SOTO, and VAN ZITTER. Defendant KASUMYAN caused the borrowers to write checks and make

withdrawals from the borrowers' business checking accounts to transfer funds to him.

1. As a result of the scheme to defraud, Wells Fargo sustained losses of approximately $2,433,194.83.

III. THE EXECUTION OF THE SCHEME

5. On or about the following dates, within the Central District of California and elsewhere, defendants HAGOPIAN, SOTO, VAN ZITTER, KASUMYAN, and BADALYAN, together with others known and unknown to the Grand Jury, each aiding and abetting the other, committed and willfully caused others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DEFENDANTS | DATE | ACT |
| --- | --- | --- | --- |
| ONE | HAGOPIAN, BADALYAN, KASUMYAN | 4/19/10 | Submission to Wells Fargo of a purported Bank of America checking account statement for Genesis Business Solution, Inc., account number XXXXX-X0090, showing a balance of $202,292.29 |
| TWO | HAGOPIAN, SOTO, VAN ZITTER | 6/27/10 | Submission to Wells Fargo of a loan application in the name of Creative Marketing International, Inc., listing H.P. as president and sole owner of Creative Marketing International, Inc. since August 2006 |
| THREE | HAGOPIAN, SOTO, VAN ZITTER, BADALYAN | 7/23/10 | Submission to Wells Fargo of a purported Bank of America checking account statement for A's Group Industries, Inc., account number XXXXX-X3321, showing a balance of $180,166.29 |

| | | | |
|---|---|---|---|
| FOUR | HAGOPIAN, SOTO, VAN ZITTER, BADALYAN | 7/28/10 | Submission to Wells Fargo of a purported Citibank checking account statement for AC&L Management Corporation, account number XXXX-XXX-7888, showing a balance of $237,885.12 |
| FIVE | HAGOPIAN, SOTO, VAN ZITTER, BADALYAN | 8/24/10 | Submission to Wells Fargo of a purported JPMorgan Chase Bank checking account statement for Core Distributors, Inc., account number XXXXX-9874, showing a balance of $270,039.51 |
| SIX | HAGOPIAN, BADALYAN, KASUMYAN | 9/15/10 | Submission to Wells Fargo of a purported Bank of America checking account statement for Express Business and Services Solution, Inc., account number XXXXX-X5525, showing a balance of $190,151.41 |
| SEVEN | HAGOPIAN, KASUMYAN | 9/20/10 | Submission to Wells Fargo of a loan application in the name of Win Solution, Inc., listing V.S. as president and sole owner of Win Solution, Inc. since June 2007 |

## COUNT EIGHT

[18 U.S.C. §§ 1014, 2(b)]

6. The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 4 of this Indictment as though fully set forth herein in their entirety.

7. On or about February 16, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAGOPIAN, SOTO, and VAN ZITTER knowingly made, and willfully caused to be made, a false statement and report for the purpose of influencing the action of Wells Fargo, whose deposits were then insured by the Federal Deposit Insurance Corporation, in connection with an application, commitment, and loan, in that, in support of an application for a loan to California Management Solutions, Inc., defendants HAGOPIAN, SOTO, and VAN ZITTER submitted and caused to be submitted to Wells Fargo a false Citibank checking account statement for California Management Solutions, Inc., account number XXXX-XXX-6969, showing a balance of $147,913.36, when in truth and in fact, as defendants HAGOPIAN, SOTO, and VAN ZITTER then well knew, no such checking account existed at Citibank at that time and California Management Solutions, Inc., did not have any account at Citibank containing $147,913.36 or any substantially similar amount.

## COUNT NINE

[18 U.S.C. §§ 1014, 2(b)]

8. The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 4 of this Indictment as though fully set forth herein in their entirety.

9. On or about April 19, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAGOPIAN, KASUMYAN, and BADALYAN knowingly made and caused to be made a false statement and report for the purpose of influencing the action of Wells Fargo, whose deposits were then insured by the Federal Deposit Insurance Corporation, in connection with an application, commitment, and loan, in that, in support of an applicatioon for a loan to Genesis Business Solution, Inc., defendants HAGOPIAN, KASUMYAN, and BADALYAN submitted, and willfully caused to be submitted to Wells Fargo a false Bank of America checking account statement for Genesis Business Solution, Inc., account number XXXXX-X0090, showing a balance of $202,292.29, when in truth and in fact, as defendants HAGOPIAN, KASUMYAN, and BADALYAN then well knew, no such checking account number existed at Bank of America for Genesis Business Solution, Inc. at that time, and Genesis Business Solution, Inc., did not have any account at Bank of America containing $202,292.29 or any substantially similar amount.

## COUNT TEN

[18 U.S.C. §§ 1014, 2]

10. The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 4 of this Indictment as though fully set forth herein in their entirety.

11. On or about June 27, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAGOPIAN, SOTO, and VAN ZITTER, together with other co-schemers, knowingly made, and willfully caused to be made, a false statement and report for the purpose of influencing the action of Wells Fargo, whose deposits were then insured by the Federal Deposit Insurance Corporation, in connection with an application, commitment, and loan, in that, defendant HAGOPIAN submitted and caused to be submitted to Wells Fargo a false loan application in the name of Creative Marketing International, Inc., listing H.P. as president and sole owner of Creative Marketing International, Inc. since August 2006, when in truth and in fact, as defendants HAGOPIAN, SOTO, and VAN ZITTER then well knew, H.P. had not been the president and sole owner of Creative Marketing International, Inc. since August 2006.

COUNT ELEVEN

[18 U.S.C. §§ 1014, 2(b)]

12. The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 4 of this Indictment as though fully set forth herein in their entirety.

13. On or about August 24, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAGOPIAN, SOTO, VAN ZITTER, and BADALYAN knowingly made, and willfully caused to be made, a false statement and report for the purpose of influencing the action of Wells Fargo, whose deposits were then insured by the Federal Deposit Insurance Corporation, in connection with an application, commitment, and loan, in that, in support of an application for a loan to Core Distributors, Inc., defendants HAGOPIAN, SOTO, VAN ZITTER, and BADALYAN submitted and caused to be submitted to Wells Fargo a false JPMorgan Chase Bank checking account statement for Core Distributors, Inc., account number XXXXX-9874, showing a balance of $270,039.51, when in truth and in fact, as defendants HAGOPIAN, SOTO, VAN ZITTER, and BADALYAN then well knew, no such checking account existed at JPMorgan Chase Bank at that time and Core Distributors, Inc., did not have any account at JPMorgan Chase Bank containing $270,039.51 or any substantially similar amount.

## COUNT TWELVE

[18 U.S.C. §§ 1014, 2]

14. The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 4 of this Indictment as though fully set forth herein in their entirety.

15. On or about August 23, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAGOPIAN, and KASUMYAN knowingly made, and willfully caused to be made, a false statement and report for the purpose of influencing the action of Wells Fargo, whose deposits were then insured by the Federal Deposit Insurance Corporation, in connection with an application, commitment, and loan, in that defendants HAGOPIAN, and KASUMYAN submitted and caused to be submitted to Wells Fargo a false loan application in the name of Win Solution, Inc., listing V.S. as president and sole owner

//
//
//
//
//
//
//
//
//
//
//
//
//

of Win Solution, Inc., since June 2007, when in truth and in fact, as defendants HAGOPIAN and KASUMYAN then well knew, V.S. had not been the president and sole owner of Win Solution, Inc. since June 2007.

A TRUE BILL

/S/

Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

BEONG-SOO KIM
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

MONICA D. MANGE
Assistant United States Attorney
Major Frauds Section